May it please the Court, my name is...Just a moment. Oh, I'm sorry, Your Honor. No, I appreciate your eagerness. I just need to get my file and to just formally call the case. I'm sorry. Which is James Washington versus the Commonwealth of Pennsylvania Department of Corrections. And you are Ms. Affronti? I am. You may proceed. May it please the Court, my name is Susan Affronti. I represent the Commonwealth appellants in this matter. And I'd like to reserve two minutes for rebuttal, if I may, Your Honor. Go ahead. This case begins and ends with the standard of review. Washington must demonstrate that the state court's decision was an unreasonable application of United States Supreme Court precedent. And he cannot do that. There are only three United States Supreme Court cases that are relevant here. Bruton, where the name of the defendant was included in the statement. Richardson, where there was no reference to his existence at all. And Gray, where there was an obvious blank in the statement. And all three of these had been well settled by the time this case was tried, right? Absolutely, Your Honor. Gray had come down, what, two years or so before the trial? Yes, 98. I think this was 2001. So yes, all three cases were clearly established. And most importantly, it was well settled before the Superior Court of Pennsylvania decided. Absolutely, that is correct. Certainly before it became final. Certainly before the Superior Court reached its decision, yes. So those are our three cases. I don't think anybody's arguing that's not the case. What the dispute is, is, as we know, the name isn't in the statement. As we know, all reference to the defendant's existence wasn't removed. And as we know, there was no blank. What we have is... What there is, is what? The driver. The driver. And the question is... How does that pass muster? Well, I would point... It's a descriptive term. It certainly is, Your Honor. There was only testimony about one driver in the whole trial. There was. The dispute here is whether or not we're allowed to look at that trial testimony. There are cases throughout the country. And I'm going to be very upfront here. This is not Third Circuit precedent. Third Circuit precedent, which you guys... If this was here on direct appeal, I would have a much more difficult case. But it is not. This is a habeas case. And Pennsylvania, the State of Pennsylvania, is allowed to look to the other circuits as well as this one and determine how to let the precedent evolve. I think no one... But they still have to be correct... Absolutely, Your Honor. ...under the holdings of the U.S. Supreme Court. They do. And we are consistent. The Commonwealth cases are entirely consistent with the Fourth Circuit. They're entirely consistent with the Eighth Circuit. So what... That's a circuit split. All right. And we are clearly under the precedent, standard of review precedent, from Cain v. Espita from the United States Supreme Court, where they told us that if you have a circuit split, you cannot say it's unreasonable. You can't only rely on this circuit's cases. You need to look throughout because we don't know what will happen when this goes up again. We don't know what the next gray case will be. Did the Superior Court cite to or rely on any of those other circuit cases? They certainly relied on Travers, which explains... Well, Travers is a Pennsylvania case. It is, but that is okay, Your Honor. Under the standard of review precedents from the United States Supreme Court, they don't have to specifically cite to Gray. Everyone knew Gray was the precedent here. They knew that Richardson applied as well. They knew that Bruton applied. Do you think that Travers properly interpreted Gray? This is going to be a very unwelcome opinion, but yes, Your Honor, I think it did. That might be a wrong opinion. It could be, Your Honor. However, there are other circuits that agree. I don't think the investigation wasn't too enamored. It wasn't. However, I would point out we're not here to review Mr. Travers' case. We don't know what happened in Mr. Travers' case. In fact, Mr. Travers' case is done. It came up on habeas, but the Bruton issue was never reviewed. What effect should Vasquez have on this panel then? Vasquez is a tremendously different case than this particular case. In Vasquez, I think the most important fact is the jury specifically said to the judge, a question came in from the jury, the statement said that Vasquez did it. Are we supposed to ignore that? And the judge then tried to fix it. This was something. What about Vasquez's treatment of Travers, though? Does that have any binding effect on us? Should that enter into our analysis here? I would point you to Parker v. Matthews, Your Honor, which says that circuit precedent and circuit interpretations of United States Supreme Court precedent are not the relevant precedent. But what about state court precedent? State court precedent, yet again, you're not looking at state court cases. What you're looking at is this case. Travers was applied by the state court, yes. But the reasoning of this case is what's relevant. You need to read this broadly. You have to presume they knew and applied the United States Supreme Court precedent. That's the presumption. We have to start from there. You can't start. I think the inclination is to start from Travers at this point and say, well, if they cite Travers, they must be wrong. And that's the wrong place to start. The United States Supreme Court tells us you must assume that they knew and applied the precedent. And they did. If you look at the Travers case itself, I don't think the Vasquez opinion really gave it enough credit. You indicate, and I think correctly, what we must presume. But what did Travers explicitly say? Travers said a couple of things. One of the things it said, and this was something you would grant, would you not, that the explicit language of Travers can't overcome any such presumption if it's at odds with? Yes, but it isn't at odds, Your Honor, I think is the problem. The section, and this is where actually Judge Chigueras, this is an important point. In Vasquez, they quoted a section from Travers, and they said this was at odds with Gray. What I find fascinating about that site is that's a direct site of a Fourth Circuit case. I'm going to pronounce it wrong, but I believe it's a Konaway, A-K-I-N-O-Y-E. And they're saying that that was the incorrect citation by the Commonwealth. In this Court's subsequent precedent, it's incorrect, but it's not incorrect under the Fourth Circuit's precedent. It's not incorrect under the Eighth Circuit's precedent. This is a clear split of authority. This is a clear instance where different circuits have done different things. And if you look at Harrington, this is the essence of fair-minded disagreement. It may be, it may be that the United States Supreme Court will go against what the Commonwealth has done, what the Second Circuit has done, what the Fourth has done, what the Eighth has done. So if one of our prior panels looks at a Supreme Court case from a state, say Pennsylvania, and says it's an unreasonable application of Supreme Court law, what do we do with that as a subsequent panel? Just ignore it? No, I don't think I can go that far. I think that Parker v. Matthews suggests you should, but that's a very strong thing to say. They didn't say Travers was unreasonable. They said the Vasquez case was unreasonable. And under those facts, certainly it is. The Vasquez case had some very unique facts in it, and they were very different than this case. This is merely a redaction using the phrase the driver, which reads just like the co-defendant said it. It doesn't look marked up. It doesn't look changed the way Gray did. And other circuits have approved this. You make a point in your reply brief that the language from Gray that talks about the kind of as opposed to the fact of is not part of the holding of Gray. It is not. I would argue that that is the reasoning of Gray. How can you defend that here this morning? Well, I would say, Your Honor, that a holding is a very small thing. A holding is the part of the opinion where they say we hold, and they do very expressly in Gray in two parts, say we hold that a blank or a symbol or other similar type of redaction is wrong. Now, they then have an entire section. The fact, I actually find this to be very interesting, this section. It's the reasoning of the opinion because what they're saying in that part, it's Section 4 of the opinion. It gets 196, and it says we are not overruling Richardson. They make that very clear in that section, and they say this is different. It is not the fact of inference. It's the type of inference. But it doesn't end there, actually. It goes further, and it says, well, what do we mean by that? And they talk about nicknames, physical descriptions, the type of evidence that if it was the very first thing admitted at trial, you would know. That's awfully different than what we have here. What you said to me at the beginning of this argument was, well, we know from the evidence at trial that he was the driver. Yes, we do, but that's true of almost every redacted statement. You can almost always infer to some degree. But Richardson said, and Gray didn't disagree. How much of that is inference, and how much of it is the product of direct evidence here, given the other evidence in the case? Well, it's inference from the other evidence. You're inferring his name into the statement based on the other evidence. There is direct evidence, however, otherwise, that he was the driver. Absolutely, from the evidence submitted at trial. We're not disputing that. Isn't your problem Taylor's prior testimony, that he's the driver? Isn't that the problem here? No, it's not. These cases are different. If you look at Bruton, and you look at Richardson, and you look at Gray, and you look at this case, you have cases that have different facts. You have different postures. Yes, oh, absolutely. There are different facts. Different postures in the case. And we're looking at this case. Yes. We're looking at Washington. Yes. And the district court. I agree. Although they know a review, but the district court disagreed with your position here. They did. And we're here looking at where does this Washington case fit in? And the one thing that I'm fairly certain about is that it isn't a Richardson case. Richardson, and I read the statement again this morning, you know, Richardson did not make any reference to Ms. Marsh at all. Oh, no, it didn't. However, there is language in Richardson that specifically says, the dissent takes us up and says, you are belittling how much this actually directly implicated Ms. Marsh. Because Ms. Marsh's argument in that case was they knew, the only reason they knew I knew about the conspiracy was the statement. It was inferred. Because the evidence at trial said I got into the car, they talked about the conspiracy, I get out of the car. They didn't delete any reference. I mean, it's very unique. And you don't see that so much from the language of the case until you read the confession. They deleted any reference to Ms. Marsh whatsoever. They did. And here in this statement by, what's his name, Waddy? Washington. Oh, Waddy, yes. Waddy, Waddy. Here in Waddy's statement, yeah, they delete reference to Washington. Yes. But they replace Washington with the term the driver, who's been previously identified by Taylor as Washington. But I would merely say, Your Honor, there is no holding of the United States Supreme Court, or even reasoning in the United States Supreme Court, that tells us you have to redact and make that very unique. And it is very unique, redaction. Well, that was your – and you gave a valid effort in trying to say that that part of Gray was not a holding. But you have to at least acknowledge that it was the reasoning behind the holding, was it not? It was certainly the reasoning behind the holding. Okay. And you're saying that – I don't believe that changes the result here at all. You're saying the reasoning behind the holding does not factor into 2254-D. Oh, no, I'm not saying that. I'm saying even with that section of the opinion, even with that reasoning, if you want to call that the holding, I actually don't have a problem with that. All right. I'm simply saying the fact of inference, not the kind of – or the kind of inference, not the fact of inference, doesn't end the case here. It simply doesn't. Let me ask you something about the record in this case. Sure. Is there any evidence in the trial record that ties Washington to the two murders besides Taylor's testimony and Waddy's statement to Detective Cummings? I don't believe so, other than the key with the co-defendant. But, no, that's it. And my time is up, so I won't explain it. We'll have you back. You will. Two minutes. Yes, thank you. Thank you. Thank you very much. Mr. Sapienza? May it please the Court, my name is Charles Sapienza, and I'm appearing today on behalf of Petitioner Appellee James Washington. Before I begin, though, I just want to note that we had filed a division of time form not too long ago. However, my co-counsel, Amy Coleman, is unavailable today, so I will be handling the sum of the argument. I want to start with the final point that Judge Smith made about what the evidence of the record stated, about the totality of the evidence on the record as far as where Washington was on the night of the robbery. And the only evidence that was offered consisted of the testimony of James Taylor and the redacted statement itself. There was no physical evidence. There was no fingerprints, no DNA evidence linking Mr. Washington to the scene. And although he was under no burden to do so, he did provide an alibi defense where numerous witnesses testified that he had been at the hospital with his family at the time of the robbery. So as your point, the evidence is pretty weak. We've got an alibi statement that probably is not going to fly, and Taylor, who's got some problems of his own in this redacted confession, right? We're saying that the statements made by James Taylor were inherently flawed because not only did he have a severe drug habit, but he also admitted to lying to authorities on a number of occasions, in his words, to make himself look better. And essentially he had a motive to lie because he was under your supervision. How does that fit into our analysis? Does that deal with the prejudice issue? Yes. That would be the final step of the analysis today, which is if there was a brutal error and if it was an unreasonable application of federal law, did it result in actual prejudice to Mr. Washington? And we submit that the evidence, aside from the brutal error, aside from the redacted statement, consists solely of the testimony of James Taylor and the testimony provided by the witnesses. What's the standard we should apply with respect to whether or not there was prejudice or harmlessness here? I think you've invoked a Chapman standard, but is that what's applicable in a 2254 or some other standard of, for instance, substantial and injurious effect? The applicable standard is the substantial and injurious standard, and that's settled under BRAC. That's under BRAC, right? Yes, correct. But I just want to point out that in a federal court review – So the – if I could just follow – the import of that is that the Commonwealth doesn't have to show that the error was harmless beyond a reasonable doubt. Is that right? Not necessarily. As I understand the standard, if a court has any doubts about whether the error could have any effect or any prejudice, it must find that the error was not harmless and that it was substantial and injurious. And so if we examine the evidence without the statement, it's almost as if the prosecution and the defense are in a state of equipoise, in a state of perfect balance. And then the statements made by Rahmat Wadi come in and have a substantial and injurious effect and essentially throw the balance – You may be being generous by characterizing it as equipoise, depending upon how people saw the testimony of Taylor. Well, the testimony – The evidence essentially boils down to where was James Washington at the time of the robbery? And you have James Taylor on one hand testifying that he was involved and witnesses testifying that he was not there. So aside from issue of facts concerning where James Washington was, there is no other evidence offered that implicate him in the robbery. Except for Taylor's testimony? Correct. Now, could it have the jury found Washington guilty based on Taylor's testimony alone? It's possible, but that is not the standard. The standard is whether the statements had a substantial and injurious effect upon the evidence that was presented. And the statements taking – Taylor's testimony and the testimony offered by Washington through his family – Let's take that out further by detailing exactly what it was that Wadi contributed. First of all, he was corroborative of Taylor. I'd like to point out that not only did he characterize Washington as the driver, but he also referred to him as someone I know. So there were essentially two redactions in the statement. Someone I know is not a neutral statement in itself either, and it connotes that Wadi was at the very least an acquaintance of whoever he was being referred to. What about the testimony regarding the vehicle? Wasn't there some testimony concerning the type and color of the vehicle? I believe that the testimony stated that it was – The testimony in the statement? That it was a dark – I think it was a reddish or a brownish color. And it was stated by James Taylor that it was Washington – or it was his mother's car. But as far as what type of car was described by Mr. Wadi, I don't recall. Well, my recollection, and the Counsel for the Commonwealth can correct me if I'm wrong, was that Wadi had indicated that the driver had a light brown Ford and that this was consistent with Police Officer Wilson's testimony at trial, that the Washington family had a bronze Ford Torx. But even still, just because Washington – like I said, it doesn't have any weight on as far as where the car was at the time of the robbery, which is really what the Commonwealth's case falls upon, because it places Washington at the scene as a driver or not. And if you have witnesses coming in defense of Washington saying that he was at the hospital as opposed to Taylor saying that he was at the scene of the robbery, that means the car was in one of two places as well. As far as the Superior Court's application of federal law is concerned, we're not arguing necessarily that Travers was wrongly decided. In fact, Judge O'Brien pointed this out in his grant of Mr. Washington's habeas petition, that Travers is decided correctly specifically for the facts of the case. And the specific holding of Travers is that the words, the other man – or I'm sorry, the other guy – will not run afoul with the Confrontation Clause so long as it only requires some evidentiary linkage to become incriminating. This has created what this Court has called a bright-line approach to these issues, and this is where the Superior Court has misapplied federal law on a number of occasions. And in fact, they've misapplied Travers. In this case, yes, they did. The exact holding of the Superior Court was that the words, the driver will not run afoul so long as it requires some evidentiary linkage to become incriminating. That is not the law under Gray. The law under Gray calls for a court to examine what kinds of inference a jury could make upon hearing a statement. And as this Court has pointed out in Vasquez, that can only be done by examining the nature of the linkage between the redacted statements and other evidence of record. So essentially, the Court must determine what sort of references could be – I'm sorry, what sort of inferences could be made by examining the totality of the evidence. Examining the totality of the evidence, in this case, Your Honor, the statement by James Taylor essentially lays the foundation for what types of inferences could be made. And then Vermont Waddy's statement is read into evidence with words such as the driver and someone I know. The inferences that were injurious in this case were that – It's someone I know, but then there's a testimony that he's known this person for 10 years. Is it an obvious deletion in your view? Someone I know? I mean, if you say I know a guy for 10 years and then you're not able to say his name, does that seem obvious, an obvious deletion? I think it would be. If you're referring to someone I know, it would just make more sense to just refer to him by name. But again, even if he's referring to him as someone I know and then refers to him later as the driver, he obviously doesn't know him as the driver. He knows him by name. So when the entire statement is read with these two particular references made, a jury would infer that these two particular references to a single person are obvious deletions. You simply just don't know someone as the driver, especially if you've known them for 10 years. And again, we just want to emphasize that the standard under Gray, and as this court has done most recently in L.A. v. Erickson, which was just published about six weeks ago, I believe, the court must examine the evidence of the record as a whole, the totality of the evidence, and determine what kind of inferences the statements can make, the redactions can make. In this case, the inferences are pretty clear, that the statements referring to James Washington as the driver and as someone I know are the same person that James Taylor had inculpated in his testimony earlier at trial. Of course, there's only four people involved in the crime, right? Correct. And as Judge Rebrenna had pointed out, too, James Taylor had turned himself in and pled guilty. So there were three people on trial, Ramont Waddy, Mr. Washington, and Willie Johnson. Willie Johnson was identified as the shooter, and going to trial was charged with first-degree murder. So Judge Rebrenna pointed out a jury who at least knows the charges and who's sitting at the defense table knows that Willie Johnson must have been the one that was the shooter, not only because he was named, but because he's being charged with first-degree murder. And if Waddy's statement is being read on the stand, he's obviously not referring to himself, so the only person that could be the shooter is James Washington. And that's just the kind of inference that runs the risk of prejudice that a court must consider in admitting certain redactions. I'm sorry, the driver. That's... Do you have anything else? I thought I did, but... There's no requirement here that you use all your time. I believe that'll be it. Thank you, Your Honor. Thank you. Rebuttal? Thank you, Your Honor. I just want to start with actually two small points. In answer to Judge Shigaris' question about someone I know being an obvious redaction, I think it's an interesting point. I would point out it could be an obvious redaction. I would also point out it could be that he didn't want to name him. That does happen a lot in statements. They refuse to name him, and the jury could have thought that just as well. And the other point I'd like to make is that in 2007, I only have a Westlaw site, 2007 Westlaw 3125116, Codefendant Johnson's statement went before the Eastern District on a habeas review, and it was affirmed. This is the statement made by the district court in that case. Respondents correctly note that there is no brutal violation when the codefendant's statement does not refer directly to the defendant but may incriminate him only when linked to evidence admitted during the trial. So I would just point out that the view of this court has changed since Hardwick. And let me stress that. The view of this court has changed since Hardwick. That is a Third Circuit case, not a United States Supreme Court case. There is clearly a split in the circuits. The United States Supreme Court has left no room for any dispute if there is a circuit split, and there is in the brutal context. Any side that the Commonwealth comes down on is not unreasonable. And if you feel that you can't go that way without overruling Vasquez or Ely, then I would encourage the court to consider an en banc because those cases were wrongly decided, in our opinion, under the standard of review. I have nothing further. Thank you, Your Honor. Thank you, counsel, for a well-argued case and an important case we all recognize. We'll take the case under advisement.